UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PEGGY LOUISE WILLIAMS,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

CASE NO. C17-5270-BAT

**ORDER REVERSING THE COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS**

Peggy Louise Williams appeals the ALJ's 2017 decision finding her not disabled. She argues the ALJ erred in (1) failing to provide a function-by-function determination in defining her residual functional capacity ("RFC"), (2) assessing certain medical opinions, (3) discounting lay witness statements, and (4) failing to proceed to step five in the sequential evaluation. Dkt. 13 at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

**A.    Function-by-Function Determination and Dr. Goff's Opinions**

The ALJ found Ms. Williams has the RFC to perform "light work." Tr. 515. Ms. Williams argues the ALJ erred by failing to perform a function-by-function assessment of her ability to "stand, walk, and sit" in determining her RFC, as required by SSR 96–8p ("the RFC

assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."). SSR 96–8p, 1996 WL 374184, at *3 (July 2, 1996). Essentially, the ALJ performs a function-by-function analysis to avoid overlooking any of the individual's limitations or restrictions. *Id*. at *4. An ALJ does this by identifying a claimant's "functional limitations or restrictions and assess[es] her work-related abilities on a function by function basis." *Id*. at * 1. The ALJ then considers each function separately, even if the final RFC assessment will combine activities. *Id*. However, the ALJ need not perform a function-by-function analysis for impairments the ALJ "found neither credible nor supported by the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). But for this standard to apply, the ALJ must have properly rejected credible evidence supported by the record.

Ms. Williams' argument thus turns on whether the ALJ properly evaluated the opinions of Barbara Goff, M.D., and Justin Turner, M.D. If the ALJ did not, then the ALJ harmfully erred. Dr. Goff treated Ms. Williams for cancer and opined: Ms. Williams' claim that her peripheral neuropathy prevents her from using her hands more than 1/3 of a workday or standing/walking six hours per day is reasonable, Tr. 500; Ms. Williams cannot stand a total of six hours in an eight hour day, Tr. 501; and Ms. Williams might need neuropsychological testing to assess memory deficits. *Id.*

The ALJ rejected Dr. Goff's opinion for five reasons. First, Ms. Williams' activities—working full days at her sister's daycare, performing most household chores, helping a daughter move, and spending a day at a casino with her husband—contradict the doctor's opinions. These activities do not contradict Dr. Goff's opinions because they do not necessarily require "handling" ability of more than 1/3 of day, or the ability to stand more than six hours.

Second, Dr. Goff's opinion is inconsistent with Ms. Williams' testimony that she can

only walk one block before needing 20 minutes rest, with her collection of unemployment benefits after she stopped working, and with how she stopped looking for work to care for her husband. Dr. Goff did not opine how long Ms. Williams could walk before needing rest. She simply opined Ms. Williams could not walk or stand six hours a day, an opinion which is not inconsistent with Ms. Williams' testimony. Dr. Goff also did not opine Ms. Williams could perform no work activity. Hence Ms. Williams receipt of benefits or care for her husband do not contradict Dr. Goff's opinions.

Third, that Ms. Williams "overstates her difficulties," i.e., is not credible. The ALJ does not provide clear and convincing reasons for rejecting a doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Here Dr. Goff accepted Ms. Williams' complaints. Dr. Goff's opinions also appear to be based on her clinical assessment and the treatment she provided Ms. Williams for her physical problems. This is highlighted by how Dr. Goff declined to give opinions regarding Ms. Williams' cognitive status, stating she did not evaluate Ms. Williams for cognitive problems. Tr. 501.

Fourth, Dr. Goff's opinion is inconsistent with other medical evidence such as how Ms. Williams can walk with a normal gait; has good range of motion, and motor strength; and is "content" with her medication management. Tr. 518. However, Dr. Goff did not opine Ms. Williams lacked normal gait, or lacked good range of movement or motor strength. Hence there is no contradiction. Rather she opined Ms. Williams could not stand or walk six hours in a day. Further the fact Ms. Williams is "content" with her medications in no way contradicts the doctor's opinions. The doctor did not say Ms. Williams was not "content" with her medications,

and the ALJ provided no discussion as to how or why the medications Ms. Williams received were somehow inconsistent with Dr. Goff's opinions about Ms. Williams' limitations. Hence while Ms. Williams' statement might indicate she is getting good treatment, it doesn't show Dr. Goff's opinions are off-base.

Fifth, Dr. Turner's opinions are inconsistent with Dr. Goff's. Tr. 518-19. Dr. Turner examined Ms. Williams in March 2016, which the ALJ acknowledged is well past the date last insured, the relevant period at issue. Dr. Turner opined Ms. Williams required regular breaks from standing or walking due to limiting symptoms caused by Ms. Williams' peripheral neuropathy. Tr. 810-11. Dr. Turner's opinion is thus consistent with Dr. Goff's in that both doctors opined peripheral neuropathy limited Ms. Williams, not inconsistent as the ALJ found.

The Court notes the ALJ rejected Dr. Turner's opinion that peripheral neuropathy limited Ms. Williams. But the ALJ cannot alter Dr. Turner's opinion in order to make it inconsistent with Dr. Goffs. Moreover, the ALJ's rationale for rejecting Dr. Turner's opinion is not supported by substantial evidence. The ALJ rejected Dr. Turner's opinion on the grounds that it is based on Ms. Williams' non-credible statements, rather than the doctor's observations. The ALJ erred because Dr. Turner did not find Ms. Williams unbelievable. Further Dr. Turner stated "She is limited due to her neuropathy **as demonstrated during the exam** as she experienced developed burning discomfort with coordination gait activities **during the exam**." Tr. 817. Hence the ALJ's findings that the doctor made no observations regarding Ms. Williams' neuropathic discomfort is not supported by substantial evidence.

The Court notes Ms. Williams argues the ALJ erred in adopting the opinion of state agency reviewing doctors Alnoor Virji, M.D., and Wayne Hurley, M.D. Dkt. 15 at 6-7. The Court need not discuss the argument because as discussed above, the ALJ erred in rejecting Dr.

Goff's opinions and Dr. Turner's opinion about limitations caused by peripheral neuropathy, and the matter must be remanded for further proceedings.

**B.      Lezlie Pickett, Ph.D.**

The parties spar over Lezlie Pickett's, Ph.D. opinion that Ms. Williams "appears to be malingering." Tr. 445. Ms. Williams claims Dr. Pickett is biased and her test results are thus unreliable; the Commissioner claims the opposite. Ms. Williams' claims are based on "Exhibit 19E" which she avers was removed by the ALJ. Because the Court lacks the exhibit and because the matter must be remanded, the Court declines to resolve the parties' respective claims here. Additionally, as the ALJ did not rely upon Dr. Pickett's opinion to reject Dr. Goff's, the Court need not address whether the ALJ properly weighed Dr. Pickett's opinion.

On remand, the Court assumes the ALJ, of course, will fulfill his or her duty to properly assess the evidence, and resolve issues regarding what weight each medical opinion should be given. This simply reflects how the ALJ, in reaching disability determinations, should rely on qualified and impartial expert opinions, rather than unqualified and partial experts. *Cf. Hill v. Astrue*, 698 F3d 1153, 1161 (9th Cir. 2012) (the ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 888 (9th Cir. 2006) ("It was also proper for the ALJ to rely on the opinion of the impartial medical examiner.").

**C.      Lay Evidence**

The ALJ rejected the testimony of Timothy Coogan and Judy Schmidt. Tr. 520. Mr. Coogan stated he employed Ms. Williams from 1998 and 2010. He states she had good attendance, completed her work and was a good worker until her cancer diagnosis. Tr. 189-90. The ALJ rejected Mr. Coogan's testimony on the grounds that the problems he described with

Ms. Williams' work performance "could be related to the claimant's chemotherapy, but which is outside the relevant period in this case." Tr. 520. But the ALJ cited no evidence in the record to support this speculative and conclusory statement, and substantial evidence therefore does not support the ALJ's rationale.

The ALJ also rejected Mr. Coogan's statement that Ms. Williams began having "trouble focusing and finishing tasks" on the grounds it is inconsistent with Dr. Pickett's test results. *Id*. Dr. Pickett's opinions regard Ms. Williams' functioning as of February 2012. The doctor reviewed medical records from November 2011 onward, and examined Ms. Williams in February 2012, and rendered an opinion as of that date. Tr. 438. Dr. Pickett did not specifically address Ms. Williams' functioning prior to the time of examination. Mr. Coogan described Ms. Williams' performance only up to October 2010, a period not covered by Dr. Pickett. Tr. 189. As such, substantial evidence does not support the ALJ's finding that Dr. Pickett's opinions contradict Mr. Coogan's testimony.

Turning to Ms. Schmidt, the ALJ rejected her testimony on the grounds it was inconsistent with the Drs. Taylor's and Pickett's opinions and with Ms. Williams' description of her activities. Tr. 520. Specifically, the ALJ rejected Ms. Schmidt's testimony that Ms. Williams could not stand very long, because her medical providers described Ms. Williams as having a normal posture and gait, and because Ms. Williams could spend hours at the casino and care for her ill husband. *Id*. The ALJ erred because Ms. Williams' gait and posture are unrelated to her neuropathy problems, and there is no evidence that going to the casino requires extended standing or walking. Further Dr. Taylor opined Ms. Williams' neuropathy would affect her ability to stand and walk, and Dr. Pickett did not perform a physical assessment.

The ALJ also rejected other aspects of Ms. Schmidt's testimony on the grounds that it

was inconsistent with Ms. Williams' statements and inconsistent with other findings made by Dr. Taylor and Pickett. Tr. 520. As Ms. Williams does not specifically challenge these findings the Court affirms the ALJ's as to these portions of Ms. Schmidt's testimony.

## CONCLUSION

The ALJ erred in rejecting Dr. Goff's opinions and also erred in rejecting Dr. Taylor's opinions regarding limitations caused by peripheral neuropathy. The ALJ erred in rejecting Mr. Coogan's testimony and Ms. Schmidt's testimony regarding standing and walking limitations. These errors are harmful because the ALJ did not account for these limitations in determining Ms. Williams' RFC and capacity to perform past relevant work. Where the ALJ has harmfully erred, the Court has the discretion to remand the case for an award of benefits or for further administrative proceedings. Here, neither Dr. Goff nor Dr. Taylor opined Ms. Williams could not perform any gainful work activity. Thus, the Court cannot determine, based on the present record, whether Ms. Williams cannot perform any work activity and is entitled to an award of benefits. Because the record needs further development to make this determination, the case should be remanded for further administrative proceedings.

The Court accordingly **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess the opinions of Drs. Goff and Taylor, the testimony of Mr. Coogan and Ms. Schmidt, and develop the record as necessary. As appropriate, the ALJ shall redetermine Ms. Williams' RFC and proceed to steps four and five.

DATED this 14th day of September, 2017.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER AND REMANDING FOR FURTHER
PROCEEDINGS - 8